Would you announce our fourth case for argument? 21-3005, South Dakota, United States v. Robert Dowdy, Sr. Mr. Anker, we see that you're appointed under the Criminal Justice Act, and we appreciate your willingness to take the case. You may proceed. Thank you, Your Honors. And counsel may please the court. I just want to thank you for allowing me the opportunity to appear here before you today. I came into this case kind of in the same way that, that Your Honors are coming into this case. I was not the, the trial counsel on this case. I was appointed to represent Mr. Dowdy shortly before the sentencing, and then represent him here on this appeal. So I came into the case not having that normal firsthand knowledge of, of what happened at a trial. So my knowledge comes from the transcripts of the hearings and the trial, just like yours is going to come here today. But as I was reviewing those transcripts, I noticed that to me, there appeared to be several issues that happened at the pretrial hearing, plus the, the trial that, that deprived Mr. Dowdy of substantial rights in this case. I mean, to begin with, there's, there was insufficient evidence to even, to even sustain the conviction. And the Rule 29 motion that had been filed by his trial counsel should have been granted. The judgment acquittal should have been granted. When you take a look at the, at the allegations in this case, I think it's important to look at the, the allegations that were made by the complaining victim. Well, counsel, before you spend a lot of time on that, please address my biggest concern. We had a lot of cases say one victim's testimony is enough and decisions on credibility are resolved in favor of the jury's verdict. I could read you a long laundry list here of them. Doesn't that completely control this case in our review? Well, yes, your honor, a, a the, the victim's testimony alone can, can handle or can, can be sufficient for a conviction, however, I believe that if you take a look at everything in the totality and look at all the evidence that was presented, that the, uh, that, that the victim's testimony in this case does not prove or is not sufficient to prove the conviction. Uh, I understand how that sounds to me. Like you're asking us to in fact, reweigh the evidence when the legal standard is we view the evidence, uh, in a light, most favorable to the verdict. Am I missing something there? Well, your honor, that you do weigh the evidence in the light, most favorable to the verdict. However, uh, there have been, that this court has previously held in other cases that, that, uh, that even though, uh, you review it most favorable to the, to the verdict, that the court can still take a look at that evidence. And that's what we certainly do. But mostly if you get the relief you're seeking in this case, it's because it's, it's, it's nearly impossible for, uh, for what, uh, the claim is to have happened. Like the, the physical evidence is it such, uh, uh, is so contrary to the victim's testimony that, that no reasonable juror could have reached that conclusion, right? That's kind of where we're left. And, and why is this that case? Well, your honor, I believe that if you look at that, the physical evidence, and then if you also look at, uh, the prior bad acts that was admitted, that testimony, uh, that goes towards the, I believe some of the prior or the prior bad act testimony that was admitted or allowed to be admitted by the district court, kind of, uh, if you will, tainted the jury painted Mr. Dowdy as this odious person. And that if that evidence, if that testimony would not have been permitted, which I don't believe it should have been permitted, if that evidence would not have been permitted, uh, then you, you come up with, uh, the, just the testimony of the, of the complaining witness in this case and take that with the evidence, uh, the other physical evidence or the lack of physical evidence along with the, uh, the evidence of Mr. Dowdy having had a partial knee replacement at the time that this alleged incident took place, that you wouldn't have, you may not have had this verdict. So there's a disputed issue of fact about that. As you know, Congress and the federal rules of evidence have both said that prior bad acts about six get in. Uh, so here are the judge, a veteran judge with significant experience, weighed all this stuff, had hearings, excluded two, he let two in, uh, goodness gracious. Is there abuse of discretion here? Your honor, I believe that there was in, in my review, I believe there was an abuse of discretion here. It granted that, that the federal rules of evidence in Congress does say that sexual assault and sex offenses can come in. However, you still need to do that balancing test and determine if the probative value is substantially outweighed by the danger of unfair prejudice. And in this case, what we have are two witnesses who testified about acts that took place. One of them, I believe about 31 years prior to the act alleged in this case. Another one, I believe it was about 26 years prior to the act alleged in this case. One of those acts was even investigated by law enforcement and there was no charges brought. Neither of the acts were there ever any charges brought against Mr. Dowdy, but yet these were allowed to come in and all it was. Was the judge aware of all that information? I believe that had been briefed. I would have to turn to the, to the record of the hearing, the pre-trial hearing on that matter. But I do believe that it had been briefed by the trial council. Yes. Right. And so the judge weighed all that and what you're saying is that in reaching the conclusion that Judge Viken did, he abused his discretion. Yes, I do believe in this case he did, Your Honor, that the, that the sole purpose of that testimony was just to create this emotional response in the jurors. And you paint Mr. Dowdy as this horrible person and use that to help bolster the testimony of, of the complaining witness whose testimony without being bolstered in this manner may not have been sufficient to sustain the conviction because there were so many issues with her testimony, coupled with the, the lack, the complete lack of any physical evidence. The fact that the allegation made was several months after the alleged incident, you have that the complaining witness, even after this incident allegedly took place, still went to Mr. Dowdy's house, still spent time with Mr. Dowdy, went to a powwow with him and, and, and did not seem to be exhibiting anything that would show that she was fearful of Mr. Dowdy or that this would have happened when she claims that it would have happened and coupled with the, with Mr. Dowdy's physical impairments at the time that this allegedly would have been enough to, to obtain a conviction in this case. So your honor, your honors, I would argue that the, that yes, the district court did, did err in, in admitting this prior bad act testimony. It's hard. It's, it's hard to say that it's, that it's like prior bad act evidence, because we're talking about just allegations that were never proven. There's no convictions. In fact, even in one of them, law enforcement investigated and they did not find any basis to bring, or to prosecute Mr. Dowdy. I also want to draw the court's attention to another one of the evidentiary rulings. And this is regarding the complaining victim's grandmother who did testify at the trial. However, the defense, the defense counsel was not allowed to go into certain aspects of statements that she had made to law enforcement or specifically statements that she had made to the, the alleged victim's physician at the time that the, that the allegations were made against Mr. Dowdy, the, the victims, the alleged victims, grandmother, she lived with her grandmother. Grandmother was the guardian, arguably, probably the person who knew her at the time, the best, had the best relationship with her. And she had expressed opinions to the physician about her, about how the, the victim acted prior to this and, and opinions as to what was going on in the alleged victim's life at that time. And the defendant was not allowed to inquire into that. Again, that may have been, if, if, if the defendant would have been allowed to inquire into that, that may have, have shown to the jury other aspects of this alleged victim and about her testimony. So your honors, I would, I would submit that the, that, that the denial of allowing the defendant to inquire into the grandmother was another, was another evidentiary ruling by the district court that was an error. Was there any proffer of what the grandmother might say? Your honor, I believe if I, if I, if, if, if I remember correctly, the, the, the pretrial hearing, or I can't remember if it was during a bench conference during the trial, did make a, did show or, or tried to argue what was contained in those medical records, those statements that were made to the, the physician in support of wanting to question Ms. Musso on that issue. So I believe statements she made to the physician would be hearsay, right? Right. But if you were questioning though, Ms. Musso regarding her statements, those are statements that she had actually made. Now there's still outside of the courtroom. Well, yes, yes, your honor. They were outside the courtroom. However, it would have gone towards her, her belief or her impression of the alleged victim. Well, it's one thing if it's a statement relating to the physical impressions of the victim, right? Those are necessary for medical treatment. And if you look at the medical record exception or the, you know, that, that's where that falls into hearsay. This is an out of court statement. If the out of court statement is like, she's not telling the truth, right? If that's the statement, that's a mirror opinion on, on truth. Generally our credibility of a witness or party that generally would invade the province of the jury. We don't let that in except in a very limited circumstance for reputation evidence. So if the testimony is you have a reputation for untruthfulness, I'm the grandmother. She lies all the time and you can't believe a word she says. And everybody knows it. Okay. That's a reputation statement, right? That's a different thing than do you believe she's telling the truth? Because I don't think you can ever ask that question. We can't ask that question of any witness. Do you think, I mean, and if there's a way that that gets into the, into evidence, I'd like to know where it is because at least my understanding of all the trials I've presided over probably about 500 of them. And I think that's a really inaccurate number. I don't believe I ever let anyone answer a question. Do you think Jones is telling the truth? And if that's the question you wanted to ask, and that's kind of seems from the motion in limine and the ruling that that's the kind of question we wanted to ask, tell me how that comes in. Well, your honor, I believe that the, that it was about, I believe trial counsel's request was about wanting to get to the, the impression of the grandmother about, about what else was going on in the alleged victim's life at the time, having her cell phone taken away and things of that nature to show that there could have been other issues involved or other reasons why these types of allegations could have been made. I have not gone back and read the transcript. I'm going through now that that's what you're saying. Cause that to me sounds like a very different thing. Like all the facts and circumstances that may lead to credibility. If you can't ask about that, that, that seems inappropriate. You know, like did something have to happen that day that caused the complaining victim to be upset? Yes. You, what happened? Well, I choose grounded. I took away her phone. That kind of stuff generally comes in. Right. But when I read the motion and the ruling, it seemed to me to be more about a question that said, do you believe she was telling the truth? Because I think she, she did make a statement to the doctor that she didn't believe that what happened is it was accurate, right? Yes. That's my understanding of the statement that was made to the doctor. Yes. Right. And that to me seems problematic. While it doesn't seem very problematic at all to me to say, was she a rebellious kid? Was she doing this? Was she doing that? Was she angry at, you know, I mean, that would all be fair game. And I didn't take the ruling and limine has taken that, uh, prohibiting that. So I'll need to look at the record. Um, and no offer of proof, I take it was actually made is, is that, is that your understanding? Mr. Your honor, having not been part of those hearings or the trial, I guess I can't accurately let the court know today if, if that had been done. Okay. And I see that I'm out of time. I just want to thank you for this opportunity today. Thank you, Mr. Anker. Court will hear from Mr. Colliner. Good morning. May it please the court and my colleague, Mr. Anker. I'm Kevin Colliner with the U S attorney's office in South here representing the government in this appeal. We're here today asking this court to affirm Mr. Dowdy's jury verdict that convicted him of aggravated sexual abuse of a child. The government is also here asking this court to affirm the life sentence that was handed down guideline range sentence that he received in August of last year. Your honors. One of the perhaps saddest observations to make about this case is that it involves circumstances that are so common to my district, therefore so common to this court that the questions raised in this appeal, this court's precedent on those questions is well-worn and well-established. The record here is of a district court that's very well-versed in the boundaries that have been dictated by that precedent. And really the record is of a district court at every turn consciously and appropriately applying this court's precedent to determine questions like whether to admit testimony from uncharged victims under rule 414. And of course, now we have questions about sufficiency of evidence based on a single victim's testimony. And as the court has indicated, cases are myriad on that issue. And the standard is very well-established that it is sufficient for one victim to testify uncorroborated by physical evidence and the court does not weigh credibility questions at this stage. I reflect on this particular record, one of the cases that's cited a lot in the briefing is the never misses the shot case. It's a case that I argued and I recall in that argument there was real question about whether the victim witness had said all the right words to meet the sufficiency standard. There was a bench conference in that case where the prosecutor was essentially told by the district court that he may not have gotten everything he needed out of that scared timid witness to meet the elements. This is not that sort of a record. When the court reads or has read the transcript here, they'll find that this victim A.S. testified at excruciating length over the details here. She testified about even minute details about where Mr. Dowdy was in the room, where she was, what she was doing that day, who was with her, that she went to go back to her house to get some sodas with her cousins. She was brought back in, where he was standing, and then ultimately the very intricate and excruciating details of this forcible sexual assault, including the key things that witnesses need to say in these cases about the anatomical contact that took place, and in her words, the rape that happened. So this simply isn't one of these cases where there's even a close question about whether that victim's testimony met the elements. In terms of the 414 ruling in this case, the court's correct that this was a district court. The record here is that there was a very careful consideration of the boundaries laid down. You know, that Never Misses a Shot case is also the case where the court expressed some about too many 414 witnesses, and the district court talked about that decision, and that was the reason, one of the reasons, the court limited it down to two. As this court has said on many occasions, that it doesn't reach past that cumulative line if there's up to three victims. Judge Erickson just wrote that in the Stanley Weber opinion last year. That's been the law of this court for some time. The Crow Eagle case is another, and there are various others that talk about that limit. Here there were two. And in terms of the similarity, these were both family members. These were both instances around the same age that this particular, that A.S. was assaulted, both instances where this defendant found an opportunity with a family member when he was left alone with a child and physically abused them, sexually abused them in very simple ways. In terms of the age of those allegations, this court has decided that question as well. That's the Gabe case that's cited in the briefing. That was also one of the considerations that the district court weighed when it made the In the Gabe case, this court noted that Congress did not impose time limits on prior sex abuse evidence. That case, they admitted a 20-year-old allegation. That was expressly rejected by Congress because, of course, the passage of time might raise some reliability questions that can be probed on cross-examination, but child abuse is one of those things in the court's words that's hard to forget. And, of course, the defendant can take the stand and refute, which is what this defendant did in this case. In terms of the argument being made that this was unfairly prejudicial, the court has also decided that particular question, writing in, I believe it was the Medicine Horn case, that the inflammatory potential inherent in the sexual nature of prior sexual offenses cannot be considered in evaluating the admissibility of evidence under Rule 413 and its analog, Rule 414. That's the Medicine Horn case. That's what this evidence is always going to be about, right? It's always going to be about difficult sexual abuse information that certainly is prejudicial to a defendant, but the question is whether it's unfairly prejudicial. So that was a part of the balancing test this district court made as well. I'll talk briefly about the testimony that was rejected by the district court regarding the grandmother, Lynn Mousseau. The questions that I just heard, I think, go to the answers that I would give. There wasn't an offer of proof, and there wasn't really a formal proffer or attorney proffer of what would be said, but it really circled around this information that was in the nurse's notes at the hospital, and the information was that A.S. was attention-seeking. Counsel, wasn't that a physician's assistant, not a nurse? I think that's right. There's also a nurse... Proceed, proceed. Physician's assistant, go ahead. That's correct, and the information that was given was that, essentially, grandma didn't believe that this had happened. So this is not information that's being given in order to help treat the child. It's not information that's being given about the child's physical state. It's really about grandma's opinion, as it would have been used in the trial, about whether or not Mr. Doughty was guilty. As Judge Erickson mentioned, that's the sort of question that's really never allowed, asking an opinion on guilt or innocence. There's really no witness that can give it. U.S. v. Griffin is an old case from this circuit, 1978. It says that very thing. Bottom line is, Ms. Mousseau was not a witness to the incident, and she wasn't a witness, say, to a recantation. This was really opinion testimony about the ultimate fact of guilt or innocence, and so it was properly excluded here. Can I ask just a question? Because I did kind of do a word search through the transcript, and I did find a place where the discussion about the actual questions were before the court. And they all really looked like the question they wanted to ask was about the phone and how the phone may be related to the hospitalization, right? And the question I've got on that, in just reading Judge Viken's kind of ruling, and it's like at 174 of the transcript, that Judge Viken kind of said, no, the hospitalization is not coming in. It doesn't have a thing to do with this case. It's not relevant. And that's it. And so that led me to believe that there is no evidence of hospitalization that's in this record at all. Is that true, or was it in? In terms of the purpose for treatment at the hospitalization? Yeah, well, all I can tell you is what I found on the. Your Honor, I think to answer your question more directly, there are a few mentions that where she made some initial statements were in a hospitalized setting. So the jury, I think, was made aware kind of by intimation that the young lady had seen professional treatment, but there was no that what was excluded was any information about diagnoses and things of that nature. In terms of that question about the phone, I believe, at least my recollection is that there were questions asked about this. She made this allegation just because she was upset about her phone privileges being taken away. So I think that was ultimately not excluded. So that evidence itself was never excluded, right? Right, right. This sort of phone theory. And so this is just bolstering of the phone theory. And apparently Judge Viken thought it was an attempt to get to something deeper than just the phone. Well, I guess my take on it was that it was a statement by a non witness to the event that she just believed that the girl was lying and that that in itself is an opinion about an ultimate fact that's disallowed. So, yeah, I just the Judge Viken's direct statement was just and I guess it's on page 183, 84. So I was wrong. It says, no, I've excluded a hospitalization business entirely on this point. So that's not admissible either. I just won't allow it. Right. I do have a little time left if the court has any questions. One one thing I'd like to ask, and maybe it's just a personal request, because I know it's within the local rules of the court. But in the briefing on this, the full names of the adult now adult victims are used in some of the briefings. I had a recent experience that makes me ask the court to use their initials in any opinion, if that's possible. And that's I've learned from past victims that the work we do results in opinions that sometimes follow people around in Google searches and so forth. And so that's just a kind of a personal request. I'd ask it's not a violation of the rules by any stretch to use their names because adult witnesses are not required to use initials. But it's something that's been made apparent to me. And I think it makes sense. So. Other than that, thank you. Yours. Thank you, Mr. Conner. Mr. Anchor, you used your time. But if there's something you'd like to respond to, I'd give you a minute. Thank you, Your Honor. I would just like to quickly respond to some of the or one of the things that Mr. Conner had discussed. And when we're talking about the statements that the victim alleged victim had made to whether it's the treating physician or the physician assistant or a nurse, there was also questioning that was cut off by the district court judge regarding her mental state at that time where she had been making regarding any suicidal ideations that she had, what was going on with her mother and her father and the suicide of a cousin and other factors that were leading to her mental state at the time that these allegations were made. And those I believe that's in the trial transcript where where the district court cut that off and what didn't allow the defendant at that time to go further into those that line of questioning. So I believe that that kind of goes more towards the or in addition goes towards some of that mental state of the of the alleged victim at the time that these allegations were made and additional, you know, evidentiary rulings that were were made against Mr. Dowdy in this case. Very well. Thank you, counsel. We appreciate your appearance today. The case will be submitted and decided in due course.